IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| MARYLAND ELECTRICAL INDUSTRY | | |
| HEALTH FUND, by its Trustee, | * | |
| William Yull | | |
| 9411 Philadelphia Road, Suite S | * | |
| Baltimore, Maryland 21237 | | |
| | * | |
| and | | |
| | * | |
| MARYLAND ELECTRICAL INDUSTRY | | |
| PENSION FUND, by its Trustee, | * | |
| William Yull | | |
| 9411 Philadelphia Road, Suite S | * | |
| Baltimore, Maryland 21237 | | |
| | * | |
| and | | |
| | * | |
| MARYLAND ELECTRICAL INDUSTRY | | Civil Action No. |
| SEVERANCE AND ANNUITY FUND, | * | |
| By its Trustee, William Yull | | |
| 9411 Philadelphia Road, Suite S | * | |
| Baltimore, Maryland 21237 | | |
| | * | |
| and | | |
| | * | |
| MARYLAND ELECTRICAL INDUSTRY | | |
| JOINT APPRENTICESHIP AND | * | |
| TRAINING COMMITTEE, | | |
| By its Trustee, Neil Wilford | * | |
| 2701 West Patapsco Street | | |
| Baltimore, Maryland 21230 | * | |
| | | |
| and | * | |
| | | |
| NATIONAL LABOR MANAGEMENT | * | |
| COOPERATION COMMITTEE, by its | | |
| Local Agent for Collection, | * | |
| William Yull | | |
| 1743 Dorsey Road, Suites 104-105 | * | |
| Hanover, Maryland 21076 | | |
| | * | |
| and | | |
| | * | |

MARYLAND ELECTRICAL INDUSTRY
LABOR MANAGEMENT COOPERATION          *
COMMITTEE, by its Agent for Collection,
William Yull                          *
1743 Dorsey Road, Suites 104-105
Hanover, Maryland 21076               *

and                                   *

MARYLAND CHAPTER,                     *
NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION, INC.,        *
1743 Dorsey Road, Suites 104-105
Hanover, Maryland 21076               *

and                                   *

LOCAL UNION NO. 24,                   *
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO,          *
2701 West Patapsco Avenue, Suite 200
Baltimore, Maryland 21230             *

                    Plaintiffs,       *

v.                                    *

DUNNING ELECTRICAL SERVICES, INC.     *
6809 W. Irving Park Road
Chicago, Illinois 60634               *

Serve:  Timothy S. Brennan, Resident Agent   *
            502 Hatherleigh Road
            Baltimore, Maryland 21212         *

                    Defendant.        *

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

## Jurisdiction

1.      The jurisdiction of this Court is based upon section 502(e) of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e) as to

Counts 1-5.

2.      The jurisdiction of this Court is based upon section 301(a) of the Labor

Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185(a) as to Counts 6-9.

## Parties

3.      Plaintiff Maryland Electrical Industry Health Fund ("Health Fund") is an

employee welfare benefit plan as defined in section 3(1) of ERISA, 29 U.S.C. § 1002(1), and

was established and is maintained by employers in an industry or activity affecting commerce

and by an employee organization representing employees in an industry or activity affecting

commerce, within the meaning of section 4(a) of ERISA, 29 U.S.C. § 1003(a).  William Yull is a

duly appointed and authorized Trustee of the Health Fund, a fiduciary within the meaning of

section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a member of the joint board of

trustees of the Health Fund, which joint board of trustees is the plan sponsor of the Health Fund

within the meaning of section 3(16)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii).

4.      Plaintiff Maryland Electrical Industry Pension Fund ("Pension Fund") is an

employee pension benefit plan as defined in section 3(2) of ERISA, 29 U.S.C. § 1002(2), and

was established and is maintained by employers in an industry or activity affecting commerce

and by an employee organization representing employees in an industry or activity affecting

commerce, within the meaning of section 4(a) of ERISA, 29 U.S.C. § 1003(a).  William Yull is a

duly appointed and authorized Trustee of the Pension Fund, a fiduciary within the meaning of

section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a member of the joint board of

trustees of the Pension Fund, which joint board of trustees is the plan sponsor of the Pension

Fund within the meaning of section 3(16)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii).

5.      Plaintiff Maryland Electrical Industry Severance and Annuity Fund ("Severance

Fund") is an employee pension benefit plan as defined in section 3(2) of ERISA, 29 U.S.C. §

1002(2), and was established and is maintained by employers in an industry or activity affecting

commerce and by an employee organization representing employees in an industry or activity

affecting commerce, within the meaning of section 4(a) of ERISA, 29 U.S.C. § 1003(a).

William Yull is a duly appointed and authorized Trustee of the Severance Fund, a fiduciary

within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a member of

the joint board of trustees of the Severance Fund, which joint board of trustees is the plan

sponsor of the Severance Fund within the meaning of section 3(16)(B)(iii) of ERISA, 29 U.S.C.

§ 1002(16)(B)(iii).

6.      Plaintiff Maryland Electrical Industry Joint Apprenticeship and Training

Committee ("Apprentice Fund") is an employee welfare benefit plan as defined in section 3(1) of

ERISA, 29 U.S.C. § 1002(1), and was established and is maintained by employers in an industry

or activity affecting commerce and by an employee organization representing employees in an

industry or activity affecting commerce, within the meaning of section 4(a) of ERISA, 29 U.S.C.

§ 1003(a).  Neil Wilford is a duly appointed and authorized Trustee of the Apprentice Fund, a

fiduciary within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a

member of the joint board of trustees of the Apprentice Fund, which joint board of trustees is the

plan sponsor of the Apprentice Fund within the meaning of section 3(16)(B)(iii) of ERISA, 29

U.S.C. § 1002(16)(B)(iii).

7.      Plaintiff National Labor Management Cooperation Committee ("NLMCC") is a management-labor association as defined by the Labor Management Cooperation Act of 1978, as amended, 29 U.S.C. § 175(a), pursuant to section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). William Yull is the appointed and authorized local agent for collection of the NLMCC.

8.      Plaintiff Maryland Electrical Industry Labor Management Cooperation Committee ("MEILMCC") is a management-labor association as defined by the Labor Management Cooperation Act of 1978, as amended, 29 U.S.C. § 175(a), pursuant to section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9).  William Yull is an appointed and authorized agent for collection of the MEILMCC.

9.      Plaintiff Maryland Chapter, National Electrical Contractors Association, Inc. ("NECA"), is an employer association incorporated under the laws of the State of Maryland.

10.      Plaintiff Local Union No. 24, International Brotherhood of Electrical Workers, AFL-CIO ("Local 24") is an unincorporated labor organization that represents employees in the State of Maryland.  Local 24 is a labor organization, as defined in section 2(5) of the LMRA, 29 U.S.C. § 152(5), that represents employees in an industry affecting commerce within the meaning of sections 2(7) and 301(a) of the LMRA, 29 U.S.C. §§ 152(7), 185(a).  Further, Local 24 is an employee organization, as defined in section 3(4) of ERISA, 29 U.S.C. § 1002(4), and represents employees in an industry or activity affecting commerce as defined in section 3(12) of ERISA, 29 U.S.C. § 1002(12).

11.      Defendant Dunning Electrical Services, Inc. ("Dunning") is a corporation organized and existing under the laws of the State of Illinois, registered to conduct business in the State of Maryland, which employs persons in the State of Maryland, in the electrical trade. Defendant Dunning is an employer, as defined in section 2(2) of the LMRA, 29 U.S.C. § 152(2),

whose activities affect commerce within the meaning of section 2(7) of the LMRA, 29 U.S.C. §
152(7).  Further, Defendant Dunning is an employer as defined by section 3(5) of ERISA, 29
U.S.C. § 1002(5), in an industry or activity affecting commerce within the meaning of section
3(12) of ERISA, 29 U.S.C. § 1002(12).

**Collective Bargaining Agreement**

12.     At all times relevant to this action, Dunning was signatory and subject to a
collective bargaining agreement with Local 24.

13.     The collective bargaining agreement with Local 24 provides for the rates of pay,
wages, hours of employment and other conditions of employment for employees of Dunning
covered by said agreement.  The Local 24 collective bargaining agreement specifically provides
for the payment by Dunning to the Health Fund, Pension Fund, Severance Fund, NLMCC and
MEILMCC of specified sums for each hour worked by each of the employees of Dunning
covered by said agreement.  The collective bargaining agreement also provides for payment by
Dunning to the Apprentice Fund and NECA of specified percentages of gross wages earned by
each of the employees of Dunning covered by said agreement.  All payments are to be made by
the 15th day of the month following the month in which the hours were worked, and such
remittances are to be accompanied by a remittance report showing the hours worked by each
covered employee, the gross wages for such employees, and the amounts owed to each Fund.

14.     The Local 24 collective bargaining agreement further provides for certain
authorized deductions to be made from the wages of the employees of Dunning.  Specifically, in
accordance with the collective bargaining agreement with Local 24, union dues are to be
deducted from the wages of the employees of Dunning and are to be remitted to Local 24.
Remittances to Local 24 are to be made by the 15th day of the month following the month in

which the hours were worked, and such remittances are to be accompanied by a remittance report showing the hours worked by each covered employee, the gross wages for such employees and the amounts owed for such hours.

### Trust Agreements

15.     Section 502(g) of ERISA, 29 U.S.C. § 1132(g), requires the Court to award liquidated damages of up to twenty percent (20%) as provided under the terms of an agreement, in addition to the amount of unpaid contributions, interest, reasonable attorneys' fees and costs when judgment is entered in favor of an employee benefit plan for unpaid contributions.  In the absence of a liquidated damages provision in an agreement, section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), authorizes an award equal to the amount of interest, which is in addition to all other amounts awarded.  ERISA further provides that interest shall be determined by using the rate specified in the agreement, or if none is so specified, at the rate prescribed in section 6621 of the Internal Revenue Code.

16.     At all times relevant to this action, the Agreements and Declarations of Trust creating and governing the Health Fund, Pension Fund and Severance Fund provide for the payment of liquidated damages in the amount of eighteen percent (18%) of the delinquent contributions.

17.     The payment of liquidated damages to the Apprentice Fund is governed by section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), which requires an award equal to the amount of interest.

18.     The Agreement and Declaration of Trust creating and governing the NLMCC provides for the payment of liquidated damages in the amount of twenty dollars ($20.00) or fifteen percent (15%) of the delinquent contributions, whichever is greater.

19.     The Agreement and Declaration of Trust creating and governing the MEILMCC provides for the payment of liquidated damages in the amount of ten dollars ($10.00) or ten percent (10%) of the delinquent contributions, whichever is greater.

20.     At all times relevant to this action, the Agreements and Declarations of Trust creating and governing the Health Fund, Pension Fund and Severance Fund provide that the rate of interest shall be eighteen percent (18%) per annum.

21.     The payment of interest to the Apprentice Fund is governed by section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and section 6621 of the Internal Revenue Code.

22.     The Agreements and Declarations of Trust creating and governing NECA and NLMCC provide for interest to be calculated at the rate of ten percent (10%) per year on delinquent contributions.

23.     The Agreement and Declaration of Trust creating and governing the MEILMCC provides for interest to be calculated at the legal rate of interest in the State of Maryland on delinquent contributions.

24.     The Agreements and Declarations of Trust creating and governing the Funds provide that a contributing employer shall permit an audit of its payroll and business records, whenever requested by the Funds, at any reasonable time during the business hours of the employer.

25.     The Agreements and Declarations of Trust creating and governing the Funds state that in the event an employer fails to submit a remittance report showing the number of hours worked by employees during a month, the Funds are permitted to estimate the amount of the contributions due by calculating the average of the monthly contributions paid by the employer for the last three months for which such contributions were paid.

## Count One
## Claim of Health Fund Against Dunning

26.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-25.

27.     Dunning has failed and refused to make required employee fringe benefit contributions due and owing to the Health Fund for hours worked by employees of Dunning for September and October, 2021, and failed to pay employee fringe benefit contributions for various months from August, 2020, through August, 2021, in a timely manner.

28.     Based on the remittance reports filed by Dunning for the months of September and October 2021, Dunning owes to the Health Fund delinquent employee fringe benefit contributions in the amount of $10,797.03 for hours worked by employees of Dunning.

29.     Dunning has not paid the employee fringe benefit contributions due and owing to the Health Fund for September and October, 2021, and owes liquidated damages in an amount to be determined on said contributions.  Dunning failed to pay the employee fringe benefit contributions due and owing for various months from August, 2020, through August, 2021, in a timely manner, and owes liquidated damages in the amount of $9,392.55 on said contributions.

30.     Dunning has not paid the employee fringe benefit contributions due and owing to the Health Fund for September and October, 2021, and owes interest in an amount to be determined on said contributions.

31.     Dunning has not paid the employee fringe benefit contributions due and owing to the Health Fund for various months from August, 2020, through August, 2021, in a timely manner, and owes interest in the amount of $1,064.92 on said contributions.

32.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the Health Fund believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff Health Fund prays:

a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff Health Fund's auditors to determine the exact amount owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.     That judgment be entered against Dunning in the amount of $10,797.03 for contributions due and owing for September and October, 2021, together with interest at the appropriate rate, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.     That judgment be entered against Dunning in an amount to be determined for the delinquent contributions for the months of September and October, 2021, and in the amount of $9,329.55 for liquidated damages due on the delinquent and late-paid contributions owed for various months from August, 2020, through August, 2021;

d.     That judgement be entered against Dunning in the amount of $1,064.92 for interest due on the late-paid contributions owed for various months from August, 2020, through August, 2021;

e.     That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the rate of eighteen percent (18%) per annum, from the date

such contributions are due and owing until the date of judgment, and liquidated damages in the amount of eighteen percent (18%) on such contributions;

f.      That Plaintiff Health Fund be afforded post-judgment interest, reasonable attorneys' fees and its costs;

g.      And, further, that such other relief be granted as this Court deems just and proper.

**Count Two**
**Claim of Pension Fund Against Dunning**

33.      Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-32.

34.      Dunning has failed and refused to make required employee fringe benefit contributions due and owing to the Pension Fund for hours worked by employees of Dunning for September and October, 2021, and failed to pay employee fringe benefit contributions for various months from August, 2020, through August, 2021, in a timely manner.

35.      Based on the remittance reports filed by Dunning for the months of September and October, 2021, Dunning owes to the Pension Fund delinquent employee fringe benefit contributions in the amount of $5,610.00 for hours worked by employees of Dunning for September and October, 2021.

36.      Dunning has not paid the employee fringe benefit contributions due and owing to the Pension Fund for September and October, 2021, and owes liquidated damages in an amount to be determined on said contributions.  Dunning failed to pay the employee fringe benefit contributions due and owing for various months from August, 2020, through August, 2021, in a timely manner, and owes liquidated damages in the amount of $4,825.12 on said contributions.

37.     Dunning has not paid the employee fringe benefit contributions due and owing to the Pension Fund for September and October, 2021, and owes interest in an amount to be determined on said contributions.

38.     Dunning has not paid the employee fringe benefit contributions due and owing to the Pension Fund for various months from August, 2020, through August, 2021, in a timely manner, and owes interest in the amount of $546.80 on said contributions.

39.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the Pension Fund believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff Pension Fund prays:

a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff Pension Fund's auditors to determine the exact amount owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.     That judgment be entered against Dunning in the amount of $4,992.00 for contributions due and owing for September and October, 2021, together with interest at the appropriate rate, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.     That judgment be entered against Dunning in an amount to be determined for on delinquent contributions for the months of September and October, 2021, and in the amount of $4,825.12 for liquidated damages due on delinquent and late-paid contributions owed for various months from August, 2020, to August, 2021;

d.      That judgement be entered against Dunning in the amount of $546.80 for interest due on the late-paid contributions owed for various months from August, 2020, through August, 2021;

e.      That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the rate of eighteen percent (18%) per annum, from the date such contributions are due and owing until the date of judgment, and liquidated damages in the amount of eighteen percent (18%) on such contributions;

f.      That Plaintiff Pension Fund be afforded post-judgment interest, reasonable attorneys' fees and its costs;

g.      And, further, that such other relief be granted as this Court deems just and proper.

**Count Three**
**Claim of Severance Fund Against Dunning**

40.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-39.

41.     Dunning has failed and refused to make required employee fringe benefit contributions due and owing to the Severance Fund for hours worked by employees of Dunning for September and October, 2021, and failed to pay employee fringe benefit contributions for various months from August, 2020, through August, 2021, in a timely manner.

42.     Based on the remittance reports filed by Dunning for the months of September and October, 2021, Dunning owes to the Severance Fund delinquent employee fringe benefit contributions in the amount of $1,652.02 for hours worked by employees of Dunning for September and October, 2021.

43.     Dunning has not paid the employee fringe benefit contributions due and owing to the Severance Fund for September and October, 2021, and owes liquidated damages in an amount to be determined on said contributions.  Dunning failed to pay the employee fringe benefit contributions due and owing for various months from August, 2020, through August, 2021, in a timely manner, and owes liquidated damages in the amount of $4,293.23 on said contributions.

44.     Dunning has not paid the employee fringe benefit contributions due and owing to the Severance Fund for September and October, 2021, and owes interest in an amount to be determined on said contributions.

45.     Dunning has not paid the employee fringe benefit contributions due and owing to the Severance Fund for various months from August, 2020, through August, 2021, in a timely manner, and owes interest in the amount of $485.48 on said contributions.

46.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the Severance Fund believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff Severance Fund prays:

a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff Severance Fund's auditors to determine the exact amount owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.     That judgment be entered against Dunning in the amount of $4,992.00 for contributions due and owing for September and October, 2021, together with interest at the

appropriate rate, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.      That judgment be entered against Dunning in an amount to be determined for the months of September and October, 2021, and in the amount of $4,293.23 for liquidated damages due on the delinquent and late-paid contributions owed for various months from August, 2020, through August, 2021;

d.      That judgement be entered against Dunning in the amount of $485.48 for interest due on the late-paid contributions owed for various months from August, 2020, through August, 2021;

e.      That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the rate of eighteen percent (18%) per annum, from the date such contributions are due and owing until the date of judgment, and liquidated damages in the amount of eighteen percent (18%) on such contributions;

f.      That Plaintiff Severance Fund be afforded post-judgment interest, reasonable attorneys' fees and its costs;

g.      And, further, that such other relief be granted as this Court deems just and proper.

**Count Four**
**Claim of Apprentice Fund Against Dunning**

47.      Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-46.

48.      Dunning has failed and refused to make required employee fringe benefit contributions due and owing to the Apprentice Fund for hours worked by employees of Dunning for September and October, 2021.

15

49.     Based on the remittance reports filed by Dunning for the months of September and October, 2021, Dunning owes to the Apprentice Fund delinquent employee fringe benefit contributions in the amount of $1,239.02 for hours worked by employees of Dunning for September and October, 2021.

50.     Dunning has not paid the employee fringe benefit contributions due and owing to the Apprentice Fund for September and October, 2021, and owes liquidated damages in an amount to be determined on said contributions, equal to the amount of interest awarded.

51.     Dunning has not paid the employee fringe benefit contributions due and owing to the Apprentice Fund for September and October, 2021, and owes interest in an amount to be determined on said contributions.

52.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the Apprentice Fund believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff Apprentice Fund prays:

a.      That this Court order Dunning to make all of its payroll and business records available to Plaintiff Apprentice Fund's auditors to determine the exact amounts owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.      That judgment be entered against Dunning in the amount of $1,239.02 for contributions due and owing for September and October, 2021, together with interest on the delinquent contributions at the rate prescribed under section 6621 of the Internal Revenue Code, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.      That judgment be entered against Dunning in an amount to be determined for liquidated damages due on the delinquent contributions owed for September and October, 2021;

d.      That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the rate prescribed under section 6621 of the Internal Revenue Code, from the date such contributions are due and owing until the date of judgment, and liquidated damages in the same amount as provided by section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

e.      That Plaintiff Apprentice Fund be afforded post-judgment interest, reasonable attorneys' fees and its costs;

f.      And, further, that such other relief be granted as this Court deems just and proper.

**Count Five**
**Claim of NLMCC Against Dunning**

53.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-52.

54.     Dunning has failed and refused to make required employee fringe benefit contributions due and owing to the NLMCC for hours worked by employees of Dunning for September and October, 2021.

55.     Based on the remittance reports filed by Dunning for the months of September and October, 2021, Dunning owes to the NLMCC delinquent employee benefit contributions in the amount of $13.47 for hours worked by employees of Dunning for September and October, 2021.

56.     Dunning has not paid the employee fringe benefit contributions due and owing to the NLMCC for September and October, 2021, and owes liquidated damages in the amount of $40.00 on said contributions.

57.     Dunning has not paid the employee fringe benefit contributions due and owing to the NLMCC for September and October, 2021, and owes interest in an amount to be determined on said contributions.

58.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the NLMCC believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff NLMCC prays:

a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff NLMCC's auditors to determine the exact amount owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.     That judgment be entered against Dunning in the amount of $13.47 for contributions due and owing for September and October, 2021, together with interest on the delinquent contributions at the rate of ten percent (10%) per year, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.     That judgment be entered against Dunning in the amount of $40.00 for liquidated damages due on the delinquent contributions owed for the months of September and October, 2021.

c.     That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of

judgment, together with interest at the rate of ten percent (10%) per year, from the date such

contributions are due and owing until the date of judgment, and liquidated damages in the

amount of twenty dollars ($20.00) or fifteen percent (15%) of such delinquent contributions,

whichever is greater;

        d.      That Plaintiff NLMCC be afforded post-judgment interest, reasonable attorneys'

fees and its costs;

        e.      And, further, that such other relief be granted as this Court deems just and proper.

**Count Six**
**Claim of MEILMCC Against Dunning**

59.      Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-

58.

60.      Dunning has failed and refused to make required employee fringe benefit

contributions due and owing to the MEILMCC for hours worked by employees of Dunning for

September and October, 2021.

61.      Based on the remittance reports filed by Dunning for the months of September

and October, 2021, Dunning owes to the MEILMCC delinquent employee fringe benefit

contributions in the amount of $121.23 for hours worked by employees of Dunning for

September and October, 2021.

62.      Dunning has not paid the employee fringe benefit contributions due and owing to

the MEILMCC for September and October, 2021, and owes liquidated damages in the amount of

$20.00 on said contributions.

63.      Dunning has not paid the employee fringe benefit contributions due and owing to

the MEILMCC for September and October, 2021, and owes interest in an amount to be

determined on said contributions.

64.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, the MEILMCC believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff MEILMCC prays:

a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff MEILMCC's auditors to determine the exact amount owed for the months of September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.     That judgment be entered against Dunning in the amount of $121.23 for contributions due and owing for September and October, 2021, together with interest at the legal rate in the State of Maryland, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

c.     That judgment be entered against Dunning in the amount of $20.00 for liquidated damages due on the delinquent contributions owed for the months of September and October, 2021.

d.     That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the legal rate in the State of Maryland, from the date such contributions are due and owing until the date of judgment, and liquidated damages in the amount of ten dollars ($10.00) or ten percent (10%) of such delinquent contributions, whichever is greater;

e.     That Plaintiff MEILMCC be afforded post-judgment interest, reasonable attorneys' fees and its costs;

f.      And, further, that such other relief be granted as this Court deems just and proper.

## Count Seven
## Claim of NECA Against Dunning

65.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-64.

66.     Dunning has failed and refused to make required employee fringe benefit contributions due and owing to NECA for hours worked by employees of Dunning for September and October, 2021.

67.     Based on the remittance reports filed by Dunning, for the months of September and October, 2021, Dunning owes to NECA delinquent employee fringe benefit contributions in the amount of $220.28 for September and October, 2021.

68.     Dunning has not paid the employee fringe benefit contributions due and owing to NECA for September and October, 2021, and owes interest in an amount to be determined on said contributions.

69.     Based on the failure of Dunning to pay employee fringe benefit contributions for the prior months, NECA believes that Dunning will continue to fail to pay employee fringe benefit contributions for future months.

WHEREFORE, Plaintiff NECA prays:

a.      That this Court order Dunning to make all of its payroll and business records available to Plaintiff NECA's auditors to determine the exact amount owed for September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

b.      That judgment be entered against Dunning in the amount of $220.28 for contributions due and owing for September and October, 2021, together with interest on the

delinquent contributions at the rate of six percent (6%) per year, from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

     c.     That judgment be entered against Dunning in the amount of all unpaid contributions that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the rate of six percent (6%) per year;

     d.     That Plaintiff NECA be afforded post-judgment interest, reasonable attorneys' fees and its costs;

     e.     And, further, that such other relief be granted as this Court deems just and proper.

### Count Eight
### Claim of Local 24 Against Dunning

70.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1-69.

71.     Dunning has failed and refused to remit to Local 24 the union dues deducted from its employees' paychecks for September and October, 2021.

72.     Based on the remittance reports filed by Dunning for the months of September and October, 2021, Dunning owes to Local 24 unremitted union dues in the amount of $2,063.04 for September and October, 2021.

73.     Dunning has not paid the remittances due and owing to Local 24 for September and October, 2021, and owes interest in an amount to be determined on said remittances.

74.     Based on the failure of Dunning to remit dues deductions for prior months, Local 24 believes that Dunning will continue to fail to pay remittances deductions for future months.

WHEREFORE, Plaintiff Local 24 prays:

     a.     That this Court order Dunning to make all of its payroll and business records available to Plaintiff Local 24's auditors to determine the exact amount owed for the months of

September and October, 2021, and any periods subsequent to the filing of this complaint and prior to the entry of judgment;

      b.     That judgment be entered against Dunning in the amount of $2,063.04 for remittances due and owing for September and October, 2021, together with interest at the legal rate in the State of Maryland from the date the delinquent contributions were due and owing until paid or until the date of judgment, whichever is sooner;

      c.     That judgment be entered against Dunning in the amount of all unpaid remittances that accrue subsequent to the filing date of this complaint and prior to entry of judgment, together with interest at the legal rate in the State of Maryland from the date such contributions were due to the date of judgment;

      d.     That Plaintiff Local 24 be afforded post-judgment interest, reasonable attorneys' fees and its costs;

      e.     And, further, that such other relief be granted as this Court deems just and proper.


December 10, 2021

Date

/s/ Corey Smith Bott

Corey Smith Bott
csbott@abatolaw.com
Bar No. 25673

/s/ Shauna Barnaskas

Shauna Barnaskas
sbarnaskas@abatolaw.com
Bar No. 16755

Abato, Rubenstein and Abato, P.A.
809 Gleneagles Court, Suite 320
Baltimore, Maryland 21286
(410) 321-0990
Attorneys for Plaintiffs